UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 24-cr-00083-DLF |
| | : | |
| PATRICK WOEHL, | : | |
| | : | |
| Defendant | : | |

**UNITED STATES' OMNIBUS MOTION *IN LIMINE***

Defendant Patrick Woehl's pretrial motions hint that he intends to argue that his words or conduct on January 6, 2021 were protected First Amendment speech. But the First Amendment does not bar the United States from using Woehl's statements to show his motive and intent, or to prove other elements of the charged crimes. Similarly, the First Amendment is not a defense to Woehl's conduct here. In addition, the United States anticipates that Woehl will seek to introduce evidence and argue that his entry into the Capitol was necessary because of his heightened concerns for his health after feeling the effects of pepper spray deployed by Capitol Police. But, Woehl cannot meet the stringent requirements of a necessity or duress defense, and he should be precluded from introducing argument on these affirmative defenses. Finally, evidence regarding security-related topics should be limited at trial.

    **I.    Woehl Should Be Precluded from Raising a First Amendment Defense to the Jury**

The United States anticipates that Woehl will seek to exclude statements he made on First Amendment grounds and argue to the jury that his conduct was protected by the First Amendment. Like dozens of January 6th defendants before him, Woehl should be precluded from eliciting evidence or arguing to the jury that his statements and actions were protected by the First

Amendment. Woehl's counsel has indicated that he opposes this motion in part.[1]

### a. Woehl's Conduct is Not Protected by the First Amendment

The First Amendment guarantees the rights to free speech and free assembly, but the right to illegally participate in a violent riot in our nation's Capitol is not one of them. The crimes with which Woehl is charged focus on his conduct, not his speech. The criminal conduct at issue includes entering and remaining in a restricted area (Count One), disorderly and disruptive conduct in restricted areas and the Capitol building and grounds (Counts Two and Three), and parading, demonstrating, and picketing inside the United States Capitol Building (Count Four).

If the United States establishes that Woehl committed any of the charged offenses, the First Amendment provides him no defense, even if evidence of Woehl's crimes is intertwined with political discussion and rhetoric. *See United States v. Amawi*, 695 F.3d 457, 482 (6th Cir. 2012) ("[A]lthough the conspiracy was closely related to, and indeed proved by, many of the defendant's conversations about political and religious matters, the conviction was based on an agreement to cooperate in the commission a crime, not simply to talk about it."); *see also United States v. Hassan*, 742 F.3d 104, 127–28 (4th Cir. 2014) (citing *Amawi*). As Judge Kelly explained in the January 6 context:

> No matter Defendants political motivations or any political message they wished to express, this alleged conduct is simply not protected by the First Amendment. Defendants are not, as they argue, charged with anything like burning flags, wearing black armbands, or participating in mere sit-ins or protests.

*United States v. Nordean*, No. 21-175 (TJK) (D.D.C., Dec. 28, 2021), ECF No. 263, pg. 29.

---

[1] Woehl's counsel agrees that Woehl cannot invoke the First Amendment during this testimony and concedes that there are very limited First Amendment rights inside the Capitol building. Woehl, however, suggests that the jury should be instructed on the First Amendment if the United States argues that he was disorderly based upon his statements and conduct outside of the Capitol building. But the First Amendment is not a defense to the crimes charged here and Woehl should be precluded from arguing that his conduct was protected by the First Amendment.

Accordingly, any line of cross-examination or argument that Woehl may wish to make regarding the First Amendment is irrelevant because it lacks a "tendency to make the existence of [a] fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Fed. R. Evid. 401, and because he is not entitled to a First Amendment defense as a matter of law. To the extent there is any relevance to any of Woehl's First Amendment claims, the Court should exclude any questioning and argument along those lines under Fed. R. Evid. 403. Any attempt to shift the jury's attention to questions about whether Woehl's conduct was protected by the First Amendment risks confusing the issues, wasting time, and unfairly prejudicing the jury.

### b. Admission of Woehl's Statements Does Not Violate the First Amendment

The United States intends to introduce videos that Woehl recorded on January 6. These videos are narrated by Woehl in real time will aid the jury's determination of Woehl's motive and intent. *See Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993) (holding that the First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent"). "Evidence of a defendant's previous declarations or statements is commonly admitted in criminal trials subject to evidentiary rules dealing with relevancy, reliability, and the like." *Id.* Accordingly, the United States asks that the Court rule that the First Amendment does not bar admission at trial of any of Woehl's statements that the United States offers to establish Woehl's motive, intent, or an element of the crime.

Courts across the country, including in January 6 cases, have allowed evidence of the defendant's statements to prove a defendant's motive or intent. As Judge Cooper ruled:

> Nor does the Court find any First Amendment concerns in the government's use of Robertson's statements to show intent. . . . If Robertson had expressed his views only through social media, he almost certainly would not be here. But he also allegedly took action—entering the Capitol without lawful authority in an alleged attempt to impede the

3

>Electoral College vote certification. His words remain relevant to his intent and motive for taking those alleged actions.

*United States v. Robertson*, 588 F. Supp. 3d 114, 124 (D.D.C. 2022) (internal citation omitted). Outside of the context of January 6th, courts have upheld the admission of a wide range of statements, including but not limited to rap lyrics, terrorist materials, and speeches advocating civil disobedience. *See United States v. Smith*, 967 F.3d 1196, 1205 (11th Cir. 2020) (rap lyrics); *United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015) (rap lyrics and tattoos); *United States v. Salameh*, 152 F.3d 88, 111–12 (2d Cir. 1998) (terrorist materials); *United States v. Fullmer*, 584 F.3d 132, 158 (9th Cir. 2009) (speeches advocating civil disobedience).[2]

Woehl's statements that shed light on the elements of the offenses, or motive or intent, should be admitted in this case, regardless of whether any of those statements may otherwise constitute speech protected by the First Amendment.

## II. Woehl Should be Precluded from Raising a Necessity or Duress Defense to the Jury

The United States anticipates that Woehl will seek to introduce evidence and have the jury instructed on necessity and duress. Specifically, on June 12, 2022, Woehl voluntarily spoke to law enforcement agents. During that interview, Woehl stated that he only went in the Capitol because police deployed smoke bombs behind him. Woehl claimed that he could not breathe and the only way to escape the smoke bombs was to go inside the building. In addition, based upon representations made by counsel, the United States anticipates that Woehl intends to introduce

---

[2] The court in *Fullmer* specifically noted that one particular defendant's conduct—which included writing an editorial and recruiting speakers to travel and advocate on behalf of his organization—was not criminal, and that punishing him based on that conduct alone would be unconstitutional. *Fullmer*, 584 F.3d at 158. The court nonetheless, citing *Mitchell*, held that this defendant's "conduct . . . does provide circumstantial evidence from which a jury could have reasonably inferred that [the defendant] was involved in a conspiracy." *Id.*

4

evidence that he has a complicated medical history and that he felt that he needed to enter the Capitol to avoid potential significant health effects from the exposure to pepper spray or smoke bombs.  The Court should preclude Woehl from presenting a necessity or duress defense (including during his opening statement and closing argument) because there was "a reasonable, legal alternative to violating the law" and he therefore cannot make the threshold showing that the affirmative defense applies.  *United States v. Bailey*, 444 U.S. 394, 410 (1980).

The affirmative defenses of duress and necessity require proof that the defendant "committed the illegal action under an unlawful threat of imminent death or serious bodily harm" and that the defendant had no "reasonable, legal alternative to committing the crime."  *United States v. Jenrette*, 744 F.2d 817, 821 (D.C. Cir. 1984); *Bailey*, 444 U.S. at 410 (noting that cases tend "to blur the distinction between duress and necessity.").  The defense is available only in narrow circumstances because "if there was a reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm, the defense will fail." *Bailey*, 444 U.S. at 410 (cleaned up).

Woehl cannot establish that he was under an "unlawful" threat of imminent death or serious bodily harm. As the United States understands Woehl's anticipated testimony, Woehl's fear of imminent bodily harm stemmed from Capitol Police deploying smoke bombs and chemical irritants in their attempts to keep rioters from breaching the Capitol building.  Because Capitol Police were acting within the scope of their official duties (and Woehl has not claimed otherwise), Woehl cannot establish that he was under an "unlawful" threat of imminent serious bodily harm.

In addition, Woehl had reasonable legal alternatives to violating the law.  Indeed, the "keystone analysis is that the defendant must have no alternative—either before or during the event—to avoid violating the law." *United States v. Singleton*, 902 F.2d 471, 473 (6th Cir. 1990);

*United States v. Nwoye*, 663 F.3d 460, (D.D.C. 2011) (affirming district court's refusal to instruct jury on duress where the defendant did not avail herself of reasonable, legal alternatives to committing the crime). The most obvious reasonable legal alternative was not to enter the restricted Capitol Grounds at all, particularly where, as here, there is evidence that Woehl knew law enforcement were deploying pepper spray before he crossed the threshold into the restricted grounds. At any given moment, Woehl could have turned around and walked away from the crowds to areas of Washington, D.C. not experiencing a riot. Or he could have asked law enforcement for assistance.

Furthermore, even assuming there was an imminent threat, Woehl was required to cease his illegal conduct as soon as possible. Instead, Woehl stayed inside the Capitol for about 30 minutes. Video evidence collected from Woehl's personal devices reveal that his time in the Capitol was not motivated by an interest in avoiding chemical irritants outside. While inside the Capitol, he tried to unlock locked doors, encouraged other rioters to confront police, and walked away from a door leading back out of the Capitol. Woehl even spent several minutes on the Speaker's balcony, looking down on the crowds and chemical spray smoke that he claims he needed reprieve from. This bars a duress or necessity argument. *See United States v. Arthurs*, 73 F.3d 444, 448-49 (1st Cir. 1996) (finding that defendant could have discarded drugs or sought help in the minutes between being threatened in a cruise ship bathroom and then exiting that ship with contraband); *United States v. Contento-Pachon*, 723 F.2d 691, 695 (9th Cir. 1984) (explaining that the "lack of reasonable alternatives" requirement generally cannot be met once the "defendant has reached a position where he can safely turn himself in to [or call on] the authorities.").

Woehl is free to testify about what he experienced, felt, and believed on January 6, including telling the jury that he only entered the Capitol out of fear for his health. The jury can

6

consider this evidence when evaluating whether Woehl had the intent to impede or disrupt the orderly conduct of Government business or the orderly conduct of a session of Congress. But Woehl's actions, including entering Capitol Grounds knowing police were deploying pepper spray and continuing towards the Capitol building despite acknowledging feeling the effects of pepper spray, preclude a necessity or justification defense. Woehl should be precluded from using evidence about his health concerns to improperly invite the jury to consider necessity or duress. *See United States v. Cantwell*, 64 F.4th 396, 409-11 (1st Cir. 2023) (affirming district court's instruction that the jury could consider evidence that the defendant had been taunted and harassed in determining whether a statement was a true threat but that evidence of provocation "does not negate the defendant's criminal culpability.").

### III.     The Court Should Limit Unnecessary Discussion of Security-Related Topics

Certain topics that could arise at trial—namely the exact locations of USCP CCTV cameras, the protocols of the U.S. Secret Service (USSS), and then-Vice President Pence's exact location during the riot—have little to no probative value but pose significant security interests if needlessly disclosed to the public. The United States does not intend to elicit any of the following topics in its case-in-chief and, therefore, cross-examination on these topics would be beyond the scope of direct and impermissible. Fed. R. Evid. 611(b). To the extent that Woehl seeks to argue that any of the following topics are relevant and within the scope of the direct examination, the United States requests an order under Fed. R. Evid. 403 foreclosing unnecessary cross-examination on these topics. Woehl's counsel has indicated that he does not oppose this motion.[3]

---

[3] Based upon discussions with Woehl's counsel, the United States understands that Woehl does not intend to question witnesses about security-related topics or protective details. Woehl does, however, intend to ask about the time that then-Vice President Pence was evacuated from the Senate Chamber. He similarly intends to ask about when Speaker of the House Nancy Pelosi was evacuated. The United States has no objection to these questions.

It is well-established that a district court has the discretion to limit a criminal defendant's presentation of evidence and cross-examination of witnesses. *See Alford v. United States*, 282 U.S. 687 (1931) ("The extent of cross-examination [of a witness] with respect to an appropriate subject of inquiry is within the sound discretion of the trial court."); *United States v. Whitmore*, 359 F.3d 609, 615–16 (D.C. Cir. 2004) ("The district court . . . has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses."). A court has the discretion to prohibit cross-examination that goes beyond matters testified to on direct examination. Fed. R. Evid. 611(b). This is particularly so when the information at issue is of a sensitive nature. *See, e.g.*, *United States v. Balistreri*, 779 F.2d 1191, 1216–17 (7th Cir. 1985) (upholding district court's decision to prohibit cross-examination of agent about sensitive information about which that agent did not testify on direct examination and which did not pertain to the charges in the case), *overruled on other grounds*, *Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016).

The Confrontation Clause guarantees only "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Even evidence that may be relevant to an affirmative defense should be excluded until the defendant presents affirmative evidence during his own case-in-chief to sufficiently establishes that defense. *See United States v. Lin*, 101 F.3d 760, 768 (D.C. Cir. 1996) (acknowledging trial court has discretion to limit cross-examination on prejudicial matters without reasonable grounding in fact); *United States v. Sampol*, 636 F.2d 621, 663–64 (D.C. Cir. 1980) (holding that trial court properly limited cross-examination of alleged CIA murder scheme until defense put forth sufficient evidence of the affirmative defense in its case-in-chief). Preventing Woehl from exploring the topics identified above will not infringe his

Confrontation Clause rights, because the exact positions of cameras, the camera map, USSS protocols, and then-Vice President Pence's exact location during the riot, implicate national security concerns, are of marginal probative value, and any probative value can be addressed without compromising the protective functions of government agencies.

> A. The Court Should Exclude Testimony on the Exact Locations of USCP Cameras

At trial, the United States will offer footage from Capitol Police cameras showing background information on the riot and Woehl's conduct on Capitol grounds and inside the Capitol.

Evidence about the exact locations of cameras, and the maps used to locate the cameras, should be excluded in light of the ongoing security needs of Congress. Absent some concrete and specific defense need to probe the camera's location, there is nothing to be gained from such questioning. A general description, and the footage from the camera itself, will make clear what the camera recorded and what it did not. Additionally, presenting the map of all U.S. Capitol Police cameras would risk compromising these security concerns for no additional probative value: the map contains numerous cameras installed in parts of the Capitol that Woehl did not visit.

Here, the video footage itself reveals the general location and angle of the camera's positioning. Additional details as to the precise location of the cameras are not relevant to the jury's fact-finding mission. Even assuming the locations of cameras is marginally relevant, the relevance is substantially outweighed by the danger to national security. The Supreme Court has recognized that trial courts' balancing should account for concerns extrinsic to the litigation, such as "witness' safety." *Olden v. Kentucky*, 488 U.S. 227, 232 (1988) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). Accordingly, courts have properly balanced the sensitivity of national security-related information against the probative value of such information to the case,

excluding the evidence where its relevance is slight. *See, e.g.*, *United States v. Marshall*, 544 F. Supp. 3d 1032, 1042 (D. Mont. 2021); *United States v. Mohammed*, 410 F. Supp. 2d 913, 918 (S.D. Cal. 2005) (finding that information having broader national security concerns can be excluded under Rule 403 because its tendency to confuse the issues, mislead the jury, create side issues or a mini-trial can result in undue prejudice that substantially outweighs any probative value); *cf. United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988) (endorsing balancing test in context of Classified Information Procedures Act). If a map that revealed the location of all Capitol cameras were introduced in this trial, or in any trial, it would become available to the general public and foreign adversaries. Immediately, anyone could learn about the U.S. Capitol Police's camera coverage as of January 6, 2021, and, importantly, could learn about the parts of the Capitol where cameras were not installed. Broader presentation of evidence about camera locations could compromise national security without adding any appreciable benefit to the determination of the truth, or the veracity or bias of witnesses.

      **B.**      **USSS Protocols**

To prove Counts One and Two, the United States intends to offer limited testimony about the Secret Service's protection of then-Vice President Pence and his family on January 6, 2021. To establish these violations, the United States must prove that the Capitol and its grounds were "restricted," for purposes of § 1752(a) because the Vice President and his family were present there and being protected by the Secret Service.[4]  *See* 18 U.S.C. § 1752(c)(1)(B) (defining restricted buildings and grounds).

---

[4] The Secret Service is authorized to protect the Vice President and his immediate family. 18 U.S.C. §§ 3056(1) and (2).

The Secret Service's general protocols about relocation for safety, including evidence on the exact location of then-Vice President Pence after his evacuation from the Senate chamber, should be excluded as irrelevant because this evidence does not tend to make a fact of consequence more or less probable. Fed. R. Evid. 401 (defining relevant evidence). Similarly, evidence of the nature of Secret Service protective details is not relevant in this case. The number or type of assigned agents on a protective detail does not alter the probability that the Capitol and its grounds were restricted at the time. None of the other elements to be proven, or available defenses, requires further testimony from the Secret Service.

Even assuming this evidence is marginally relevant, the relevance is substantially outweighed by the danger of confusion of the issues, mini-trials, undue delay, and waste of time. *See Mohammed,* 410 F. Supp. 2d at 918. Broader cross-examination of Secret Service witnesses could compromise national security without adding any appreciable benefit to the determination of the truth, or the veracity or bias of witnesses. *Id.*

## CONCLUSION

The United States respectfully requests that the Court preclude Woehl from introducing evidence or arguing to the jury that his words or actions are protected by the First Amendment, presenting a necessity or duress defense, or introducing evidence on security-related topics.

>
> Respectfully submitted,
> MATTHEW M. GRAVES
> United States Attorney
> DC Bar No. 481052
>
> By: /s/ Anna Z. Krasinski
> ANNA Z. KRASINSKI
> Assistant United States Attorney
> New Hampshire Bar No. 276778
> United States Attorney's Office
> Detailed from the District of New Hampshire
> (603) 451-7851

11

anna.krasinski@usdoj.gov

/s/ Matthew Beckwith
MATTHEW BECKWITH
DC Bar No: 90014452
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20004
(202) 252-7109
Matthew.Beckwith@usdoj.gov